LOVE (KANE v.). See Case No. 7,608.

## Case No. 8,549.

### LOVE v. LOVE.

[21 Pittsb. Leg. J. 101.]

District Court, W. D. Pennsylvania. Jan. 10, 1874.

PETITION OF THE FAIRVIEW DEPOSIT BANK TO TAKE MONEY FROM THE ASSIGNEE.

1. The lien of an execution stayed by order of court is not disturbed.

2. The execution creditor in this case had a valid subsisting lien, unaffected by the subsequent bankruptcy proceedings.

3. A judgment note is not commercial paper.

In bankruptcy.

Register's report:

On the 16th of October, A. D. 1872, John Love, Jr., applied to the Fairview Deposit Bank, a firm doing business in Fairview, Butler county, for the loan of $2,000, which amount the said bank loaned him, taking from him, according to the usual course of business of the bank, a note, with warrant to confess judgment, allowing six per cent. for attorney's commission, for the said sum of two thousand dollars. This sum, less fifty dollars deducted for discounting the said note, he was allowed as a credit upon the books of the bank in which he had been doing business since Sept. 24, 1872, and in which up to that time he had made deposits amounting in the aggregate to over four thousand dollars, but at the time of making said loan had overdrawn his account over eight hundred dollars. There is no evidence of the actual financial condition of John Love at the time, except that he and others told the cashier of the bank that he had a house in Oil City worth twenty thousand dollars, and was doing a large business in Monterey, Clarion county, of which the assignee, at a time when the value must have shrunk largely, testified that the property connected therewith would be worth thirteen thousand dollars at a forced sale. The first deposit of John Love was nine hundred dollars, and his subsequent deposits indicated a business involving the use of a large amount of capital. Subsequent to October 16th, Love continued to do business with the bank, his deposits being, if anything, larger in amount than before, and at one time showing a balance of over two thousand dollars in his favor. He continued doing business with the bank until December 6th, 1872, when there was a balance against him of one hundred and twenty-one dollars, besides interest amounting to seventy-six dollars. During the period he was thus doing business with the bank, he would occasionally make overdrafts, but would invariably tell the cashier of the bank of the same, and request him to take care of them, promising to provide for them immediately, and afterwards fulfilling his promise. In order, however, to assure the cashier of his ability to meet these overdrafts, he showed him bills in his favor amounting to over four thousand dollars.

Before the note in question matured, the cashier notified John Love when it became due, which, according to our calculation, was the 18th of December, 1872. After that there was no communication between the parties, and the bank, after waiting until the 6th of January, 1873, which they deemed a reasonable time for the payment of the same, sent the note to their attorney in Kittanning, with orders to enter it up and collect it. This, with proper diligence, he proceeded to do, and, by execution issued in Clarion county, levied upon personal property of the defendant at Monterey, amounting in value to thirteen thousand dollars. At the time the execution was issued, there is no evidence either that the financial condition of John

Love had changed for the worse, or that the Fairview Deposit Bank knew or suspected that he was in failing circumstances or that he was contemplating bankruptcy or insolvency. On the contrary, the evidence of all the witnesses shows that they believed him to be solvent. On the first day of February, A. D. 1873, proceedings were instituted by Charles J. Love in the United States district court to force John Love into involuntary bankruptcy. Upon this, an order to show cause why he should not be adjudicated a bankrupt was allowed, returnable to February 15, 1873; and February 4th, 1873, an injunction was granted against the Fairview Deposit Bank enjoining them in meantime from proceeding further with their execution. In obedience to this command, the attorney of the bank stayed the execution. He did not, however, abandon his claim thereunder, but twice notified the assignee that he should insist upon the lien of the bank, which, excepting eight hundred dollars for labor under the act of 1872 [17 Stat. 334], was the first upon the property; and on October 31, 1873, the bank filed its petition to be paid by the assignee the full amount contained in their proof of claim. The petition was referred to the register for examination and report. Upon the day appointed for a hearing (October 29th, 1873), it appearing that the assignee had not sold the property, an agreement was made by the assignee and the attorney of the bank, whereby it was agreed that evidence might be taken upon said petition, notwithstanding the assignee had not sold the property; and if the court should be of the opinion that the petitioners were entitled to hold under the execution in that event the sheriff of Clarion county should be allowed to sell upon said execution, or the assignee should proceed to sell the property, and pay the proceeds to said petitioner to the extent of the amount due them, as should be deemed advisable by the court.

1. Are the petitioners now in a situation to demand the redress sought for? The adjudication in bankruptcy was res inter alios acta, in which the petitioners were neither bound nor had the right to interpose exceptions to prevent the injunction against them. Karr v. Whitaker [Case No. 7,613]; Bump, Bankr. 620; In re Dunkle [Case No. 7,160]; In re Bush [Id. 2,222]. The adjudication was merely temporary, and intended to restrain the disposition of the goods and property of the debtors until an order of adjudication could be passed. Bump, Bankr. 41; Bankrupt Act, § 40 [14 Stat. 536]; In re Moses [Case No. 9,869]. Being thus intended to secure the property for the creditors and prevent irreparable injury thereto before the assignee could act, it could work no injury to the claimant. "Actus curiae neminem gravabit. Actus legis nemini facit injuriam." The register is therefore of the opinion that no right of the claimant has been lost through

the proceedings that have heretofore taken place, and that, the claimants having stayed their execution in obedience to the injunction of the bankrupt court, the assignee took the property subject to actual valid subsisting liens on the same. Bump, Bankr. 150; In re Schueppf [Case No. 12,471]; In re Campbell [Id. 2,349]; Ex parte Hambright [Id. 5,973]; Armstrong v. Richey [Id. 546].

2. Did the claimant have at the time of the filing of the petition in bankruptcy a valid subsisting lien, unaffected by the provisions of the bankrupt act? The answer to this involves some of the most abstruse questions connected with the bankrupt law (section 39) declares that any person who, "being bankrupt or insolvent, or in contemplation of bankruptcy or insolvency, * * * shall give any warrant to confess judgment, or procure or suffer his property to be taken on legal process, with intent to give a preference to one or more of his creditors, * * * or with intent by such disposition of his property to defeat or delay the operation of this act, or who, being a banker, a merchant or trader, has fraudulently stopped and not resumed payment of his commercial paper within a period of fourteen days, shall be deemed to have committed an act of bankruptcy": "provided said petition is brought within six months after the act of bankruptcy is committed." There is no question that the petition was filed in time; and the register is therefore required to decide the following questions: First. Did the defendant, when in a bankrupt or insolvent condition, or in contemplation of bankruptcy or insolvency, give the warrant to confess judgment with intent to give a preference? Second. Did he procure or suffer his property to be taken on legal process with intent to give a preference? Third. Being a banker, merchant or trader, did he fraudulently stop or suspend and not resume payment of her commercial paper for the period of fourteen days?

As to the first question, we find there was not only no evidence of bankruptcy or insolvency or contemplation thereof at the time the warrant was given, but the evidence tends to show that the defendant was actually solvent. It is true that, upon the date of the transaction his account was overdrawn; but the evidence is positive that he "borrowed" the money, and that he paid a discount upon the whole amount of the sum loaned, instead of only the part which he had overdrawn. Nor are we to presume that, if the defendant were insolvent and about to give a preference, the bank would undergo the risk of losing twelve hundred dollars, in order to obtain a preference on eight hundred dollars. We therefore have no hesitation in deciding that the transaction was not a preference under the law.

Second. Did he, being insolvent or bankrupt, or being in contemplation thereof, pro-

cure or suffer his property to be taken on legal process with intent to give a preference? There is no evidence that he was insolvent when the execution was issued. It is true that the note in question had been due a few days, and that he had overdrawn his account one hundred and twenty-one dollars, but such an overdraft would be of slight moment in view of the fact that his deposits in two months had aggregated thirteen thousand dollars, and that in the large business between the defendant and the bank such overdrafts had occurred several times before, and the fact that he owed twenty-two hundred dollars would hardly be sufficient to prove the insolvency of a man who was reputed to worth thirty-three thousand dollars. If it did have such a result, we fear that a large portion of the business men of the country would be in an insolvent condition. The testimony shows no change in his condition except in the debts referred to; and all the witnesses concur in their belief of his solvency at the time. They also concur in proving the fact that the proceedings taken to collect the note were instituted and carried on without his knowledge or consent. Even if he were insolvent, we do not think his right to proceed in the usual way to collect his claim would be affected.

It is true in the Case of Black [Case No. 1,457]; followed by in Re Craft [Id. 3,316], and in a number of other cases, it was held that, when an execution was issued after insolvency, it was a suffering of property to be taken under legal process with intent to give a preference, because it was the duty of the defendant to institute voluntary proceedings in bankruptcy. It is hard to perceive how such a duty could arise where neither the creditor nor the debtor knew of the insolvency of the latter; but under the law as it now stands, that a debtor cannot obtain his discharge without paying fifty per cent. of his debts, such a construction would work an intolerable hardship, not only to the creditor, but to the debtor, who would be compelled to undergo large expense and trouble without any recompense. The later cases, however, and especially in this district, have taken another, and, in our opinion, a wiser, view of the subject. In Vogel v. Lathrop [Id. 16,985], it was held that when a note and warrant of attorney was given within four months before proceedings in bankruptcy, being the agreed security for a loan made at the time, and the creditor had no reasonable cause to believe the debtor insolvent, though he knew him to be so on entering the judgment, the judgment was valid. McKennan, J., says: "And I am unconvinced by any argument that it is a sound construction of the bankrupt act to hold that a security free from any infirmity when it was made was given in fraud of its provisions, or to defeat or delay its operation, because a subsequent exigency may have

prompted the creditor to avail himself of the means of saving his debt, which the law authorizes him to stipulate for as an essential part of his contract." It is true that this was said of a judgment entered as a lien upon real estate, but the principle applies equally as well to an execution upon personal estate; and the judge afterwards, in the same case, in deciding illegal an execution issued after insolvency, while he recognizes Re Black [supra], and other cases, is particular to base his decision on the fact of collusion between the creditor and defendant. In Re Wright [Id. 18,071], and Tiffany v. Lucas [15 Wall. (82 U. S.) 410], the principle set forth by Judge McKennan is held still more strongly, and applied to executions; these cases deciding that, although the creditors had reason to believe the debtor was insolvent, an execution without the consent of the debtor was a valid lien upon his property. In the matter the register, Samuel Harper, expressed his dissent from the decision in Vogel v. Lathrop [supra], and in an exhaustive opinion showed the evident inconsistency between holding that judgment on warrant entered after insolvency was a lien upon real estate and that an execution in the same case would be an act of bankruptcy, but, while he expressed his views thus fully, was constrained to decide in conformity with Vogel v. Lathrop. His decision was confirmed, notwithstanding his argument against it. In Marshall v. Knox [16 Wall. (83 U. S.) 551] the reasoning of the court was based upon, and assumed as the law, the principle laid down in Re Wright and in Re Karr and in Re Tiffany [supra]; the court saying that "such a case is similar to that of an execution, in reference to which it has been properly held that, when the levy is made before the commencement of the proceedings in bankruptcy, the possession of the office cannot be disturbed by the assignees. The latter in such case is only entitled to such a residue as may remain in the sheriff's hands after the debt for which the execution issued has been satisfied." In Wilson v. Childs [Case No. 17,796], and Biddle's Appeal, 18 P. F. Smith [68 Pa. St.] 13, the principle is fully adopted and applied in this district and state. Under both the evidence and the law, therefore, we hold that the lien of the execution was valid, and this, in our view, disposes of the case; but as the court may dissent from us on the law, we proceed to discuss the third question.

Third. It was argued by the assignee that the petitioner's note had been due more than fourteen days before he commenced proceedings to collect it; that this was an act of bankruptcy, of which the petitioner must have knowledge; and that, having such knowledge, his subsequent execution was void. Was this an act of bankruptcy? To be such the default must have been by one who was a banker, merchant or trader, and

the security must have been commercial paper. There is no evidence that the defendant was either a banker, merchant or trader. The commercial definition of a trader is one who makes it his business to buy and sell merchandise or other things ordinarily the subject of traffic and commerce. In re Cowles [Case No. 3,297]; In re Chandler [Id. 2,591]. Certainly there is nothing to show that he, the debtor, came within this definition, and nothing to show that he was a banker or merchant. The security was what is called a "judgment note." Is such a security commercial paper? The term 'commercial paper' is used in the bankrupt act to denote bills of exchange, promissory notes, and negotiable bank checks,—paper governed by those rules which have their origin and are established upon the custom of merchants in the commercial transactions known as the 'law merchant.' In re Nickodemus [Id. 10,254]; In re Hollis [Id. 6,621]; In re Chandler [supra]; In re Stevens [Id. 13,393]. It seems that this does not include a judgment note. In Overton v. Tyler, 3 Barr. [3 Pa. St.] 346, it was decided (Gibson, J., delivered the opinion) that such a note was not negotiable in a commercial sense; and such has been the general opinion of this state since that time. In Zimmerman v. Anderson, 17 P. F. Smith [67 Pa. St.] 421, the decision in Tyler v. Overton seems to be doubted, but it is not overruled, and the distinction is clearly drawn that in the latter case there was no warrant to confess judgment which was the fact in the former.

For the reasons set forth, therefore, we cannot doubt that the stoppage of payment on this note for fourteen days was not an act of bankruptcy, and, not being an act of bankruptcy, could not by itself be notice to the creditor of the insolvent or bankrupt condition of the defendant. The assignee having the property in his possession, it is the opinion of the register, in view of the facts above set forth, that he should be directed to sell the same, and pay from the proceeds thereof the debt of the petitioners, with interest to the day of sale and the cost of his execution, as prayed for in his bill, as modified by the agreement between his attorney and assignee.

To which report and opinion exceptions were filed by the assignee, which were argued before McCANDLESS, District Judge, who, by decree of the court, overruled the exceptions, and affirmed the decision of the register.